IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ELIZABETH A. ROMERO,**

    **Plaintiff,**

**v.**                                                                                                                    **No. 14-cv-1160 SMV**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security Administration,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse or Remand Administrative Agency Decision [Doc. 21] and the Memorandum Brief in Support [Doc. 22] (collectively, "Motion"), filed on June 8, 2015. The Commissioner responded on August 28, 2015. [Doc. 29]. Plaintiff replied on September 28, 2015. [Doc. 30]. The parties have consented to the undersigned's entering final judgment in this case. [Doc. 25]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Motion is not well-taken and should be denied.

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981; 416.1481. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g). Generally, the Commissioner's final decision is that of the Administrative Law Judge ("ALJ"), but in some cases, it is that of the Appeals Council. *Williams v. Bowen*, 844 F.2d 748, 749 (10th Cir. 1988). Where the Appeals Council has modified the ALJ's decision, the Appeals Council's

decision is the final decision of the Commissioner, *White v. Schweiker*, 725 F.2d 91, 94 (10th Cir. 1984), regardless of whether the Appeals Council officially granted or denied review, *McDaniel v. Sullivan*, No. 91-5188, 1992 U.S. App. LEXIS 18471, at *4 (10th Cir. July 31, 1992) (unpublished) (citing *Williams*, 844 F.2d at 749).  However, if the Appeals Council denies review and does not modify the ALJ's decision, the ALJ's decision becomes the Commissioner's final decision, and the district court reviews the ALJ's decision.  *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994) (citing 20 C.F.R. § 404.981).

Additionally, the Tenth Circuit Court of Appeals has held that in some situations, a district court must review the ALJ's decision but also consider evidence beyond that which was considered by the ALJ.  *See Martinez v. Barnhart*, 444 F.3d 1201, 1207–08 (10th Cir. 2006); *O'Dell*, 44 F.3d at 859.  Pursuant to 20 C.F.R. § 404.970(b), any new and material evidence that relates to the period on or before the date of the ALJ's decision shall be considered by the Appeals Council in determining whether to review the ALJ's decision.  Because a court reviews the final decision based on "the record as a whole," it will consider the evidence that was before the ALJ as well as the new and material evidence that was before the Appeals Council.  *Id.* (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). Considering all of the evidence in the administrative record, a court decides whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied.  *Maes*, 522 F.3d at 1096.

## Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show: (1) she is not engaged in "substantial gainful activity"; *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) her impairment(s) either meet or equal one of the "Listings"[2] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.  If she cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## Procedural Background

Plaintiff applied for a period of disability, disability insurance, and supplemental security income on July 29, 2010.  Tr. 19.  She alleged a disability-onset date of February 1, 2010.  *Id*. Her claim was denied initially and on reconsideration.  *Id*.  Plaintiff requested a hearing before an ALJ.  *Id*.  On October 29, 2012, ALJ Douglas S. Stults presided over the hearing from

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

Oklahoma City, Oklahoma. Tr. 19, 41, 43. Plaintiff appeared by video conference with her attorney from Santa Fe, New Mexico. Tr. 19, 43. The ALJ heard testimony from Plaintiff, Plaintiff's case manager Patricia Gallegos, and an impartial vocational expert ("VE") Abby C. Mundy. Tr. 19, 43, 78–90.

The ALJ issued his unfavorable decision on April 12, 2013. Tr. 19–34. At step one he found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 21–22. Because Plaintiff had not engaged in substantial gainful activity for at least 12 months, the ALJ proceeded to step two. *Id*. There, he found that Plaintiff suffered from the following severe impairments: "major depression; generalized anxiety disorder; and obsessive-compulsive disorder." Tr. 22–24. At step three the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 24–25.

Because none of Plaintiff's impairments met a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 25–32. The ALJ found that:

> [Plaintiff] has the [RFC] to perform a full range of work at all exertional levels, but with the following non-exertional functional limitations: understand, remember, and carry out only simple instructions; make only simple work[-]related decisions; deal with only occasional changes in work processes and environment; have only incidental, superficial work-related type contact with the general public, co-workers, and supervisors, i.e., brief, cursory, succinct communication relevant to the task being performed; and must avoid any fast pace, production pace, or assembly line pace type work.

Tr. 25.

At step four the ALJ found that Plaintiff was able to return to her past relevant work as a warehouse worker and garment sorter. Tr. 32–33. Having found that Plaintiff could return to her past relevant work, the ALJ was not required to proceed to the fifth step, but he did so

5

nevertheless. Tr. 33–34. At step five the ALJ found that, based on her age, education, work experience, and RFC, Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy. *Id.* Ultimately, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, during the relevant time period, and he denied the claim. Tr. 34. The Appeals Council denied Plaintiff's request for review on November 6, 2014. Tr. 1–5. Plaintiff timely filed the instant action on December 30, 2014. [Doc. 1].

## Analysis

Plaintiff fails to show that the ALJ erred in evaluating the opinion of licensed mental health counselor Nicholas Brown or in evaluating Plaintiff's credibility. Accordingly, the Commissioner's decision will be affirmed, and the Motion will be denied.

### I. Plaintiff fails to meet her burden to show that the ALJ erred in evaluating the opinion of Mr. Brown.

Plaintiff challenges the ALJ's evaluation of Mr. Brown's opinion. She argues that the ALJ applied an incorrect legal standard. [Doc. 22] at 13–25. Additionally, she argues that substantial evidence does not support all of the ALJ's reasons for according the opinion limited weight. [Doc. 22] at 24, 25; [Doc. 30] at 7. Neither of her arguments is persuasive.

#### a. The Legal Standard Applied by the ALJ

Plaintiff argues that remand is warranted because the ALJ failed to apply the correct legal standard when evaluating the opinion of Plaintiff's long-time counselor at The Life Link, Nicholas Brown, M.A., L.M.H.C. [Doc. 22] at 13–25. Specifically, Plaintiff complains that the ALJ erred in finding that Mr. Brown's opinion could not be accorded "great . . . weight" because

he was not an "acceptable medical source."[3, 4] *Id.* at 14 (quoting Tr. 32). Plaintiff acknowledges that as a licensed mental health counselor (as opposed to a physician or psychologist) Mr. Brown does not qualify as an "acceptable medical source." *See id.* at 13–25. In fact, Plaintiff does not dispute that, as a non-acceptable medical source, Mr. Brown's opinion is not entitled to "controlling weight" as a treating source opinion. *See id.* at 14. Rather, Plaintiff takes issue with the ALJ's statement that Mr. Brown's opinion could not be accorded "great" weight. *Id.* at 14, 18–19 (citing Social Security Ruling ("SSR") 06-03p).

The Commissioner argues that the ALJ properly weighed Mr. Brown's opinion. [Doc. 30] at 11–13. She points out that Mr. Brown's status as a non-acceptable medical source was not the only factor considered by the ALJ. *Id.* at 11 (citing Tr. 32). Another factor was that Mr. Brown's opinion was unsupported by Life Link's own records.[5] Tr. 32.

Licensed mental health counselors like Mr. Brown fall within the category of "other sources," whose opinions may be considered to show the severity of a claimant's impairment. *See* §§ 404.1513(d), 416.913(d); SSR 06-03p, 2006 SSR LEXIS 5, 2006 WL 2329939, at *1–2. An ALJ must *explain* the weight given to such opinions. *Keyes-Zachary v. Astrue*, 695 F.3d

---

[3] "Acceptable medical sources" are physicians, psychologists, and in certain circumstances, optometrists, podiatrists, and qualified speech-language pathologists. 20 C.F.R. §§ 404.1513(a), 416.913(a). Mr. Brown is a licensed mental health counselor, and the ALJ considered him to be a non-acceptable medical source. Tr. 31–32; *see also* §§ 404.1513(d)(1), 416.913(d)(1) (providing examples of "other"—i.e., non-acceptable medical—sources).

[4] The ALJ "accept[ed] . . . as credible" portions of Mr. Brown's opinion about Plaintiff's mental limitations but rejected others. Tr. 31–32. The ALJ explained that because the rejected portions of the opinion were "not consistent with Life Link's own records as discussed[, and because] the therapist is not considered an acceptable medical source . . . , [the therapist's opinion] cannot be accorded great or controlling weight." Tr. 32 (citing 20 C.F.R. §§ 404.1513, 416.913).

[5] The Commissioner adds that Mr. Brown's opinion was not consistent with the other record evidence, and she provides specific evidentiary support. [Doc. 29] at 13. However, the ALJ himself did not compare Mr. Brown's opinion to the rest of the record, and he did not indicate that in weighing Mr. Brown's opinion, he had considered the consistency of the opinion with the rest of the record. *See* Tr. 19–34. Because this reason was not offered by the ALJ himself, the Court may not consider it. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (Reviewing courts may only evaluate an ALJ's decision "based solely on the reasons stated in the decision" and may not "supply[] possible reasons" for an ALJ's decision after the fact.).

1156, 1163 (10th Cir. 2012); SSR 06-03p, 2006 SSR LEXIS 4, 2006 WL 2329939, at *6. "[T]he factors for weighing the opinions of acceptable medical sources set out in 20 C.F.R. §§ 404.1527(d), 416.927(d) apply equally to all opinions from medical sources who are not acceptable medical sources as well as from other non-medical sources."[6] *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (internal quotation marks omitted). Ultimately, the ALJ's explanation is "sufficient if it permits [the court] to 'follow the adjudicator's reasoning.'" *Keyes-Zachary*, 695 F.3d at 1164 (quoting SSR 06-03p, 2006 SSR LEXIS 5, *5–6, 2006 WL 2329939, at *6).

In this case, the ALJ gave "limited weight" to Mr. Brown's "psychological conclusions." Tr. 32. In pertinent part, the ALJ found:

> [Plaintiff]'s treating therapist, Nicholas Brown, M.A., LMHC of LifeLink, proffered a Medical Source Statement. . . . He completed a very thorough chart that essentially precluded performance of many mental abilities needed to perform unskilled work. He did find that she could understand and remember very short and simple instructions as well as carry out same. He noted that she could ask simple questions or request assistance of others. He noted that she would be aware of normal hazards and take appropriate precautions in a work-like setting. She has the ability to interact appropriately with the general public; can adhere to basic standards of neatness and cleanliness and use public transportation. He made some general findings about her exertional capacity also. . . .

---

[6] Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(c), 416.927(c).

> Mr. Brown's treating notes of January 2012 and June 2011 at [Tr. 439, 441] are themselves not consistent . . . .
> With regard to the psychological conclusions, the [ALJ] accepts those cited herein as credible. However, the more restricted findings are not consistent with LifeLink's own records as discussed. Although the opinion is accorded limited weight as it provides an assessment of [Plaintiffs]'s issues, strengths[,] and psychological weakness, the therapist is not considered an acceptable medical source and, hence, the Statement cannot be accorded great or controlling weight.

Tr. 31–32 (internal citations omitted). Essentially, the ALJ adopted some of Mr. Brown's findings but rejected others. *See id.* The ALJ explained that he was rejecting some of the findings because they were inconsistent with Plaintiff's treatment notes from The Life Link, including Mr. Brown's own notes. *Id.* The ALJ further explained that he was rejecting some of the findings because Mr. Brown was not an acceptable medical source. *Id.*

The Court finds that the ALJ applied the correct legal standards in weighing Mr. Brown's opinion. The Court agrees that the ALJ erred in stating that Mr. Brown's opinion could not be accorded great weight. While an ALJ is not bound to accord such opinions controlling weight under the treating physician rule, *see* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 06-03p, 2006 SSR LEXIS 5, at *4, 2006 WL 2329939, the regulations do not preclude an ALJ from according such opinions great weight. But that misstatement is the beginning and the end of the error. It is of no consequence for several reasons. First, the ALJ explained that he was according "limited" weight to the opinion, which was within his discretion. Nothing in the regulations required him to accord the opinion any greater weight. Second, the ALJ weighed the opinion according to two of the regulatory factors. *Compare* Tr. 31–32 (finding that Mr. Brown's opinion was inconsistent with the treatment notes and that he was not an "acceptable medical source"), *with* §§ 404.1527(c)(3) and (c)(5), 416.927(c)(3) and (c)(5)

9

(factors that correspond to the ALJ's findings). Finally, and most importantly, the Court is able to follow the ALJ's reasoning. Therefore, the Court finds that despite the ALJ's misstatement, he nevertheless applied the correct legal standards in weighing Mr. Brown's opinion.

### b. The Evidence Supporting the ALJ's Findings

Plaintiff challenges the ALJ's finding that Mr. Brown's opinion is unsupported by his own treatment notes. She complains that the ALJ "picked and chose" from among Mr. Brown's treatment notes, citing only to those that were inconsistent with Mr. Brown's ultimate opinion and ignoring the rest. [Doc. 22] at 24, 25; [Doc. 30] at 7. Plaintiff does not dispute that the records cited by the ALJ are, in fact, inconsistent with Mr. Brown's opinion. *See* [Doc. 22] at 24, 25. Instead, she complains that the ALJ failed to cite other notes, which apparently, she believes are consistent with Mr. Brown's opinion. *Id.* at 24. For example, Plaintiff points to notes reflecting her struggles in her relationship with her significant other, poor self-esteem, bed bugs, and "deep[] shame by family dynamics." *Id.* (citing Tr. 376–377, 421–26). She further points to notes identifying some of her coping skills, describing her progress with drug court requirements, medications, and diagnoses. *Id.* at 25 (citing Tr. 547–48).

Certainly, an ALJ "may not pick and choose among medical reports, using portions of the evidence favorable to his position while ignoring other evidence." *Keyes-Zachary*, 695 F.3d at 1166 (internal quotation marks omitted). But neither is an ALJ required to discuss "every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).

The Court has reviewed all of the evidence cited by Plaintiff. *See* [Doc. 22] at 24–25; [Doc. 30] at 1–3. Some of the treatment notes could be interpreted as supporting Mr. Brown's opinion. But these same notes also could be interpreted as being inconsistent with it. The Court

may not re-weigh the evidence. *See Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005). Thus, Plaintiff fails to meet her burden to show that the ALJ impermissibly picked and chose from among the evidence. She fails to show that the ALJ's finding (that Mr. Brown's opinion is unsupported by his treatment notes) is not supported by substantial evidence.

## II.  Considering that Plaintiff fails to show any error in the ALJ's weighing of Mr. Brown's opinion, her arguments relying on the opinion are moot.

Relying on Mr. Brown's opinion, Plaintiff argues that she met Listing 12.04 and that the ALJ presented an incomplete hypothetical to the VE. [Doc. 22] at 14–15. However, because she fails to show that the ALJ erred in weighing Mr. Brown's opinion, these arguments are moot.

## III. Plaintiff fails to show reversible error in the ALJ's assessment of her credibility.

Plaintiff argues that the ALJ erred when he relied on her attempts to look for work in finding her less than fully credible. [Doc. 22] at 6–10. She argues that doing so was a "glaring and fatal error." *Id.* at 6.

The district court cannot re-weigh the evidence. It can only review an ALJ's decision to ensure that she applied the correct legal standard and that her findings are supported by substantial evidence. *Clifton*, 79 F.3d at 1009. "Credibility determinations are peculiarly the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks omitted). Boilerplate language, however, is insufficient. *Id.* Instead, "it is well settled that [ALJs] must give reasons for their decisions." *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988). Although ALJs need not discuss "every piece of evidence," *Clifton*, 79 F.3d at 1010, their "findings as to credibility should be closely and affirmatively linked to substantial evidence

and not just a conclusion in the guise of findings." *Kepler*, 68 F.3d at 391 (internal quotation marks and brackets omitted).

Here, the ALJ adequately evaluated Plaintiff's credibility and sufficiently linked his credibility determination to substantial evidence. Tr. 25–31. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. Tr. 31. But he also found that her statements regarding the intensity, persistence, and limiting effects of the symptoms were not credible. *Id.* The ALJ then elaborated on these findings. Tr. 25–31.

For example, the ALJ found that the records from The Life Link were "replete with numerous statements, objectives, goals and expressed desire to return to work." Tr. 30. He found that Plaintiff's "intention to work reflect[ed] an ability and intention to do so and [was] not consistent with the idea that she is permanently disabled." Tr. 29. He reasoned that "[h]olding oneself out as able and willing to work is inconsistent with [the] idea that one is disabled and unable to engage in work activity. Hence, [he found that Plaintiff]'s credibility [was] severely diminished by her assertions of having the ability, willingness[,] and capacity to work." Tr. 30. The ALJ further found that Plaintiff's reported vision and obesity symptoms were not consistent with the results of her physical examinations. *Id.* He found that her medications, when taken, were relatively effective in controlling her symptoms. *Id.* Nevertheless, there was evidence that Plaintiff was not consistently compliant with her medications and Plaintiff offered no explanation as to why. *Id.* Next, the ALJ found that Plaintiff had sought and received regular treatment for depression and obsessive-compulsive disorder. *Id.* Based on these reasons, the

ALJ concluded that Plaintiff's reported symptoms were credible only to the extent that they were consistent with the RFC.  Tr. 30–31.

Plaintiff objects to the ALJ's findings regarding her desire to work.  [Doc. 22] at 6–10.  However, the Tenth Circuit Court of Appeals has more than once affirmed an ALJ's adverse credibility finding that relied on a claimant's interest in returning to work.  *Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013) (observing that the plaintiff's interest in returning to work supported adverse credibility finding); *Mendez v. Colvin*, 588 F. App'x 776, 779 (10th Cir. 2014) (same).  In this case, the ALJ's credibility determination passes muster because he sufficiently linked his credibility determination to substantial evidence.

IV. Plaintiff fails to show that reversal is warranted based on Listing 12.04(C)(3).

Plaintiff argues that she meets Listing 12.04(C)(3) because her residence at The Life Link qualified as a "highly supportive living arrangement."  [Doc. 30] at 6−8; *see* [Doc. 22] at 10, 13.  She testified that The Life Link paid her rent and utilities and provided treatment with doctors and psychologists. Tr. 65.  She also contends, incorrectly, that her case manager testified that she "could not live or function without [services from The Life Link]." [Doc. 30] at 6.  That is incorrect.  The record does not reflect such testimony from Ms. Gallegos.  Tr. 78–81.  Plaintiff herself testified that she could not live on her own without home visits from her case manager, but Ms. Gallegos did not.  *See* Tr. 64–65 (Plaintiff's testimony), 78–81 (Ms. Gallegos's testimony).

The question before the Court is what exactly constitutes a "highly supportive living arrangement."  The regulations suggest that such an arrangement typically constitutes placement in a hospital, halfway house, care facility, or personal home setting that "greatly reduce[s] the

mental demands placed on [the claimant]." 20 C.F.R. § 404, Subpart P, App. 1, § 12.00(F); *see also Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994) (remanding, *inter alia*, for findings on whether the plaintiff's living arrangement—including daily check-ins and therapy sessions at least three times per week—qualified as a highly supportive living arrangement).

The ALJ in this case made no express finding regarding Listing 12.04(C)(3). *See* Tr. 19−34. Nevertheless, the Court finds that Plaintiff fails to show reversible error. Plaintiff points the Court to the testimony of her caseworker and to the medical opinion of Mr. Brown. [Doc. 30] at 6–8. However, neither suggests that Plaintiff requires a highly supportive living arrangement or that Plaintiff's housing situation through Life Link qualifies as such. *See* Tr. 78−81 (testimony of Ms. Gallegos); Tr. 421–26 (medical opinion of Mr. Brown). Plaintiff identifies no other evidence to support her argument, and the Court finds none.

The only evidence of record that *could* bear on whether Plaintiff's residence at Life Link may satisfy Listing 12.04(C)(3) is Plaintiff's own testimony, which the ALJ did not find entirely credible. *See* Tr. 50 (Plaintiff's testimony that Life Link "has requirements for them to help [her] with [her] house[, i.e.] to maintain [her] therapy and go to appointments"); Tr. 62 (Plaintiff's testimony that, through Life Link, she attends therapy once every one or two weeks, and additionally the case manager "comes over and checks [her] house."); Tr. 64 (caseworker checks progress in home regarding hoarding, "maintaining [her] house, keeping it clean, seeing how [she's] doing with [herself], how [her] health is, making [her] appointments. [The caseworker] just checks on all the progress [she's] making."); Tr. 64−65 (Plaintiff's testimony that she would not be able to live on her own without home visits from her Life Link caseworker).

14

Even if the ALJ had found Plaintiff fully credible, however, her testimony would still have been insufficient to find that she has met Listing 12.04(C)(3).  The living arrangement described by Plaintiff (free housing and utilities and home visits once or twice per month) does not rise to the level of structure and support contemplated by the Listing.

Assuming *arguendo* that Plaintiff's housing through Life Link constituted a "highly supportive living arrangement"—which it does not—the evidence simply does not show that Plaintiff was "unable to function outside" of the arrangement.  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(C)(3).  Nor does the evidence show an "indication of a need for such arrangement."  *Id.*; *see* Social Security Administration Program Operations Manual System § DI 22511.005, § E(1)(b), available at https://secure.ssa.gov/poms.nsf/lnx/0422511005 (last visited November 3, 2015) (sufficient *documentation* is required to establish an inability to function outside of a highly supportive living arrangement and an indication of continued need for such arrangement).  Accordingly, Plaintiff fails to meet her burden before this Court to show that there is reversible error regarding Listing 12.04(C)(3).  *See Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (finding no error in an ALJ's failure to consider a particular Listing where the record did not support its applicability).

V.  New arguments raised for the first time in the Reply are waived.

In her reply, Plaintiff advances at least two new arguments.  First, she asserts that "there is no indication [in the record] that [she] can work at any job on a sustained basis, eight hours per day, forty hours per week, except the clearly subsidized temporary work she performed at the Salvation Army warehouse in 2009 and 2010 [as a garment sorter]." [Doc. 30] at 3.  This argument is waived because Plaintiff did not raise it in her brief in chief.  *See United States v.*

*Harrell*, 642 F.3d 907, 918 (10th Cir. 2011) ("[A]rguments raised for the first time in a reply brief are generally deemed waived.").

Plaintiff further argues that her work at the Salvation Army did not qualify as substantial gainful activity and, therefore, did not qualify as "past relevant work" at step four. *Id.* at 4–5. This argument, too, is raised for the first time in her Reply and, thus, is waived. Even if the argument were not waived, though, it would be moot. Considering that the ALJ alternatively found that Plaintiff could perform other work at step five, any error at step four (as Plaintiff alleges) would be moot.

## Conclusion

Because Plaintiff fails to meet her burden before this Court to show either that the ALJ applied an incorrect legal standard or that his decision was not supported by substantial evidence, the Commissioner's final decision should be affirmed.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision [Doc. 21] is **DENIED**. The final decision of the Commissioner is affirmed.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**